# CHARLESTON.

## SMITH v. SCHLEGEL.

Submitted November 2, 1901. Decided March 22, 1902.

1. WILLS—*Construction*—*Devisee's Title.*

  S. made his will as follows: "*First*, I do ordain that out of my personal property or the proceeds of the same that my debts justly due as well as my funeral expenses be paid. *Second*, After paying all my just debts as well as my funeral expenses, I give and bequeath to my beloved wife R. S. the farm on which I now live *on* in the county of Pleasants, State of West Virginia, containing seventy-one acres of land more or less, also I give to my beloved wife R. S. all of my personal estate of every kind, moneys, notes, claims, and accounts included, that remain after paying my debts and funeral expenses to be hers

during her natural lifetime and to be disposed of by her as she may deem best for her comfort in life." *Held*: R. S. took the real estate in fee simple. (p. 248).

Appeal from Circuit Court, Pleasants County.

Bill by A. T. Smith and others against Pat Schlegel and Fried & Co. and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

V. B. ARCHER, WILLIAM BEARD, and T. M. GARVIN, for appellants.

J. W. VANDERVORT and JOHN F. BARROW, for appellees.

MCWHORTER, JUDGE:

Hiram Spindler made his will and died leaving no children, which will was admitted to probate in the county court clerk's office of Pleasants County, on September 21, 1883, which will, omitting the formal parts, is as follows: "*First,* I do ordain that out of my personal property or the proceeds of the same that my debts justly due as well as my funeral expenses be paid. *Second,* after paying all my just debts as well as my funeral expenses, I give and bequeath to my beloved wife, Rebecca Spindler, the farm on which I now live on in the county of Pleasants, State of West Virginia, containing seventy-one acres of land more or less, also I give to my beloved wife, Rebecca Spindler, all of my personal estate of every kind, moneys, notes, claims and accounts included, that may remain after paying my debts and funeral expenses to be hers during her natural lifetime, to be for her support and comfort through life and to be disposed of by her as she may deem best for her comfort in life. *Third,* I do nominate and appoint my beloved wife Rebecca Spindler my executrix of this my last Will and Testament, for me and in my name to settle, adjust and pay all debts due, and settle, receive and receipt for all claims due me." Sometime afterwards his widow, Rebecca Spindler, intermarried with Thomas Way and afterwards, on the 15th day of February, 1898, Rebecca Way and Thomas Way made a lease of the said seventy-one acres of land, in consideration of twenty-four dollars paid in hand and the further consideration of the covenants and agreements of said lease for oil and gas purposes, to Schlegel

and Fried & Co.  On the 18th day of September, 1900, David Spindler and others, claiming to be the heirs at law of Hiram Spindler, executed a lease for oil and gas purposes on said tract of land to A. T. Smith and J. B. Parker.

The last will and testament of Rebecca Way was admitted to probate on the 18th day of July, 1900, in said clerk's office, whereby she devised said tract of land to her brother, William Hanes, and to her nephew, J. B. Terry, in equal parts, providing that if oil should be produced on said farm they were to pay to Robert S. Johnson, her nephew, one-third of the proceeds of the oil until he should receive five hundred dollars.  On the 31st day of December, 1900, A. T. Smith and J. B. Parker, lessees, and the said David Spindler and others filed their bill in the circuit court of Pleasants County against Schlegel and Fried & Co., William Hanes and J. B. Terry in his own right and as executor of the last will and testament of Rebecca Way, deceased, Robert S. Johnson and Thomas Way defendants, setting up their right to the land and the lease for oil purposes to Smith and Parker, exhibiting the several wills and leases with their bill, and alleging that the lease made by Rebecca Way and her husband to Schlegel and Fried & Co. constituted a cloud to their title to said real estate which should be removed and that Schlegel and Fried & Co. under their pretended lease were endeavoring to put down a well upon said land, and praying for an injunction to restrain them and that their said lease be canceled, that a receiver be appointed, etc.  An injunction was granted as prayed for.  Schlegel and Fried filed their demurrer to the bill and filed their answer and cross-bill.  Other answers were filed and depositions taken and the cause submitted on the 16th day of May, 1901, when the court held that the plaintiffs to the original bill were not entitled to relief, and dismissed the bill and held the lease made to Schlegel and Fried, on the 15th day of February, 1898, to be valid and that the lease dated 18th of September, 1900, made by David Spindler and others to Smith and Parker constituted a cloud upon the title of the plaintiffs in the cross-bill, Schlegel and Fried, and canceled the said last mentioned lease, dissolved the injunction, awarded the plaintiffs in the original bill, and perpetuated the injunction awarded to Schlegel and Fried on their cross-bill, and awarded costs against Smith and Parker in favor of Schlegel and Fried,

from which decree Smith and Parker and the said heirs at law of Hiram Spindler appealed.

The first question to be settled in this case is, what Rebecca Spindler took under the will of Hiram Spindler. There is no question arising in the case as to the personal property disposed of by said will. If the two clauses in the contested part of the will were transposed so as to read "I give and bequeath to my beloved wife Rebecca Spindler all my personal estate of every kind, moneys, notes, claims and accounts included, that may remain after paying my debts and funeral expenses, also I give to my beloved wife, Rebecca Spindler, the farm on which I now live containing seventy-one acres of land more or less, to be hers during her natural lifetime, to be for her support and comfort through life and to be disposed of by her as she may deem best for her comfort in life," it is not probable that any question would have ever been raised as to her absolute title to the personal property under the will. In *Doe* v. *Westley,* 4 Barn & Cress, where the testator after giving several legacies, the bequest of each commencing with the word "item" devised as follows: "Item, I give and bequeath unto C. D. all that my messuage and tenament wherein I now dwell with the garden and all the appurtenances thereto belonging; and I also give to the said C. D. all my household goods and chattels, and implements of household, within doors and without, all for her own disposing free will and pleasure, immediately after my decease;" Judge Bailey says: "Then the testator proceeds: 'I also give,' etc. It is an old observation, that the introduction of the word 'Item' shows that the testator is dealing with a new subject, and that the words following apply to that only, and not to the preceding matter, unless the intention that they should do so is plain. Here the words, 'all for her own disposing,' may apply to both clauses, but that is not by any means clear; we are, therefore, bound to hold that they apply to the second clause only." The first part of the clause in the will under consideration, "I give and bequeath to my beloved wife, Rebecca Spindler, the farm on which I now live on in the county of Pleasants, State of West Virginia, containing seventy-one acres of land more or less," is complete and stands without limitation or condition and is a clear gift of the farm and cannot be affected by any strained construction applying the apparent limitation following the disposition of the personal property thereto. In 29

A. & E. E. of L. 369, it is said: "It has become a rule of construction that a clear gift is not to be cut down by any subsequent provision, unless the latter is equally clear, but perhaps the better statement is that a clear gift is not to be cut down by anything which does not, with reasonable certainty indicate an intention to cut it down. Whichever form be adopted, the plain intention of the testator and not the comparative lucidity of the two parts of the will is to be regarded." In *Collins* v. *Collins,* 40 Ohio St. 353, quoting with approval from *Thornhill* v. *Hull,* 2 Clark and Finn 22: "It is a rule of the courts in construing written instruments that when an interest is given or an estate conveyed in one clause of the instrument, in clear and decisive terms, such interest or estate cannot be taken away or cut down by raising a doubt upon the extent and meaning and application of a subsequent clause nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate." And in *Freeman* v. *Coit,* 96 N. Y. 63, it is held: "Where an interest is given in one clause of a will it cannot be cut down or taken away by raising a doubt from other clauses, but only by express words or by clear and undoubted implication." Also *Byrnes* v. *Stilwell,* 103 N. Y. 453, "An estate in fee created by a will cannot be cut down or limited by a subsequent clause, unless it is as clear and decisive as the language of the clause which devises the estate." In *Bell* v. *Humphrey,* 8 W. Va. 1, in Syl. 3, it is held: "A clearly expressed intention in one portion of the will is not to yield to a doubtful construction in any other portion of the instrument." It is a well settled rule that "Of two modes of construction, that is to be preferred which will prevent a total intestacy." In *Houser* v. *Ruffner,* 18 W. Va. 244, it is held that, "In construing wills words and expressions of doubtful meaning will not be construed if it can be avoided so as to create an intestacy; the testator having made a will will be presumed to have intended to dispose of his whole estate, unless the contrary shall plainly appear." And in *Dawes* v. *Swann,* 4 Mass. 208: "In the construction of a will, the court will give effect to all the words, without rejecting or controlling any of them, if it can be done by reasonable construction not inconsistent with the manifest intention of the testator." *Graham* v. *Graham,* 23 W. Va. 36. And in *Whelan* v. *Reilly,* 5 W. Va. 356, it is held: "When the language of a testator is plain and

his meaning clear, the courts have nothing to do but to carry out the will of the testator, if not inconsistent with some rule of law." It is insisted by appellants that the case of *Miller* v. *Potterfield,* 86 Va. 876, is similar to the case at bar and should be followed. In that case "Testator gave his wife all his property to hold for her own use and dispose of as in her judgment she might deem best should it become necessary for the support of herself and W. G., whom he desired to remain with her during her lifetime and have such care given him as he might need. After her death testator willed that all the property should be given W. G. *Held:* Wife takes life estate with a conditional power of sale." In that case there was a limitation over to W. G., while in case at bar there is no provision made in the will for any other disposition than that to be made by the wife even of the personal property and no limitation over as to realty or personalty. In *Cole* v. *Cole,* 79 Va. 251: "Testator said, 'I give to my wife all my estate during her lifetime and at her death half of the real estate and half of the personal property that may be on hands to do with and as she may see proper, and the other half of my real estate and personal property to go to the heirs of my brother.' The widow claimed only the personalty in absolute right. *Held:* The words 'that may be on hands' fairly construed impliedly gave to the wife the absolute disposal of the personalty *at least* and the limitation over to the heirs of the brother is repugnant and void." And to the same effect *Carr* v. *Effinger,* 78 Va. 197; also *Jackson* v. *Bull,* 10 Johns. 18; *Campbell* v. *Beaumont,* 91 N. Y. 464. In *Milhollen* v. *Rice,* 13 W. Va. 510 where the testator said: "I desire that the personal part of my estate be sold, or so much thereof as will satisfy and pay all my debts and funeral expenses; and the balance of said property to remain on the plantation for the benefit of my wife Eleanor Milhollen to use or dispose of at her discretion during her natural life, and also to have the right of disposal at her death," it was held that this gave to the wife the personal estate in absolute property, the gift of it for life with power to consume or dispose of the principal at her discretion being construed to amount to giving her the absolute property. In *Cole* v. *Cole* cited, it is said, "Little aid can be derived in the construction of wills from adjudged cases, as each case must be governed by its own particular facts and circumstances." It is conceded that it is proper to look to the circumstances sur-

rounding Hiram Spindler at the time of the making of his will and as said by counsel for appellants in their brief: "The property was the property of Hiram Spindler; it had been acquired by him during the time he had lived with his wife Rebecca, the title was in him." They had lived together some thirty years and had two children, both of whom were dead; they had had with them when children William Hanes, the brother of Mrs. Spindler, and J. B. Terry, her nephew, and it seems that they were regarded very much as a part of the family, they had borrowed from Hanes a part of the money with which they bought the farm; the wife having shared the hardships and toil with the husband in their efforts to accumulate a little property was evidently regarded by him as being entitled to a full share with himself, she having very probably done as much, especially in the way of economizing and saving, as he had done in providing the means with which to pay for the property they had. The language of his will expresses his devotion to her and his provision for her support even to the extent of all the property and in her disposition of the property by her will she evidently carries out the purpose they both had in view. His chief purpose was to provide fully for his wife and give her the benefit and the right of disposal of all the property. Section 8, chapter 75, Code, provides that, "Where any real estate is conveyed, devised, or granted to any person without any words of limitation, such devise, conveyance, or grant shall be construed to pass the fee simple or the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear by the will, conveyance, or grant." Rebecca Spindler, under the will of Hiram Spindler, took the real estate in fee simple, this being so, there is no error in the decree and the same will be affirmed.

*Affirmed.*