## Richmond.

WALLACE v. MINOR.

DECEMBER 12th, 1889.

1. WILLS—*Construction*—*Contingent remainders.*—Testator devises his estate "for the use, benefit, and behoof of my daughter * * * during her natural life, and for the use of the heirs of my said daughter after the death of my said daughter": *held,* those who at the daughter's death are her heirs, will take a contingent remainder under the will, which will vest at the daughter's death.

2. IDEM—*Word "heir"*—*Technical words.*—The word "heir" has a well-known technical meaning. Technical words are *prima facie* to be taken in their legal sense, unless from the contents of the will it plainly appears that testator intended to use them in a different sense.

Appeal from decree of circuit court of Loudoun county, rendered October 19, 1888, in the chancery cause wherein James M. Wallace was complainant and Fairfax C. Minor, J. Monroe Heiskell, Minor Heiskell, an infant, George A. Ropp, executor of Samuel Ropp, the personal representatives of Louisa Fairfax Minor, and others, were defendants. The decree dismissed the bill and the complainant appealed. Opinion states the case.

*John M. Orr*, for the appellant.

*S. Ferguson Beach*, for the appellees.

LACY, J., delivered the opinion of the court.

The bill was filed to subject a tract of land in the county of Loudoun, lying on the Potomac river, containing 550 acres, known as "Greenway," to the payment of a debt of $5,000 secured thereon by trust deed executed by certain of the appellees, to-wit: John W. Minor and Louisa F. Minor, his wife, and Essie F. Heiskell, T. Parkyn Scott, trustee, Fairfax C. Minor, J. Monroe Heiskell, on the 19th day of March, 1872, to Charles P. Janney, trustee, to secure the payment of the said sum to the appellant, with interest at the rate of 10 per centum per annum. The Greenway tract of land was claimed by the grantors in the said deed under the will of the father of the said Louisa F. Minor, who died in 1845. The controversy in this case has arisen under the following clause of the said will: "I give and devise one-third part or portion of my whole estate—real, personal, and mixed—of every kind and description whatever, which I may die possessed of or owning, to my daughter-in-law, Esther Ann Catlett, and her heirs, in trust for the use, benefit, and behoof of my daughter, Louisa Fairfax Minor, wife of John West Minor, during her natural life, and for the use of the heirs of my said daughter after the death of my said daughter, subject to the annuity aforesaid." "And my will is, and I hereby empower and require the said Esther Ann Catlett, trustee as aforesaid, as soon as convenient and practicable after having received the said legacy or proceeds of said devise, to loan out the same at interest on good and sufficient security, by bonds and mortgage on unincumbered real estate, and to apply the interest or income which shall or may arise, accrue, or be derived therefrom to the payment and discharge of all the expenses and charges necessary and required for the proper maintenance, comfort, and support of my said daughter Louisa; or the said trustee may, if she shall in her discretion deem it proper, pay over the interest or income aforesaid to my said daughter Louisa, semi-annually, in money, on her sole and separate receipt, independent of any interference, hindrance, or control of her husband, or by him, and the said

income or interest shall not be so liable or taken for her husband's debts or contracts, nor be applied to the payment thereof, nor any part thereof." The whole estate was directed by the will to be sold and converted into money. The said Esther Ann Catlett first acted as trustee, but subsequently she was relieved of the trust, and the said John W. Minor was substituted as trustee.

Most of the property of the said testator was, as the will directed, sold and converted into money, but this Greenway tract of land was not. This land was divided in kind, and one-third allotted to Mrs. Minor's trustee, to be held on the trusts of the will. In 1854 the trustee purchased with the trust money the other two-thirds of the said tract of land called " Greenway," and taking the deed to himself individually. On the 12th day of June, 1865, the said trustee conveyed by deed, in which his wife united, the said land so purchased, and the whole of Greenway, to T. Parkyn Scott, for the sole and separate use and benefit and behoof of the said Louisa Fairfax Minor, wife of the said John West Minor, during · her natural life, and for the use of the heirs of the said Louisa Fairfax Minor after her death, and in manner and form as set forth and provided in the will of the said Charles I. Catlett, as aforesaid. In 1871–72 Mrs. Minor and T. Parkyn Scott, trustee, conveyed this land to secure certain creditors, and suit was brought to subject the said land to the payment of these debts. In that suit, the court, being of opinion that Mrs. Louisa F. Minor had no power to incumber or dispose of either the *corpus* or income of the trust fund except as provided in the will of the said Charles I. Catlett, dismissed the bill, and the creditors claiming under the said deeds appealed to this court, where the said decree was substantially affirmed. See the case of *Ropp* v. *Minor*, 33 Gratt., 107 (opinion of Burks, J.), where it is said : " Our conclusion is that Mrs. Minor had no power to dispose of, or charge or incumber the *corpus* of the estate derived by her under the will of her father, or acquired under

the several deeds set out in the record, except such, if any, as was acquired under the deed of her son Fairfax C. Minor, dated the 11th day of May, 1865. If she took anything under this last-named deed, \* \* \* she was expressly empowered by the deed to dispose of it as if she were 'an unmarried woman.' Nor did she have the power to anticipate the profits, income, or interest which might arise or be derived from said estate (except as to the interest, if any, acquired, as aforesaid, under the deed of her son Fairfax), so far as they might be required for her comfortable support. \* \* \* The effect, therefore, of the several deeds of trust was to create liens for the debts mentioned therein on such excess, if any, of the profits or income arising from the Greenway farm during the life of Mrs. Minor, and also on the estate, if any, acquired by her under the deed from her son Fairfax."

In the said case of *Ropp* v. *Minor* this court considered and settled the question therein involved, to-wit, the power of Louisa F. Minor over her separate estate. But Mrs. Minor and her trustee, and other appellees named above, having conveyed the estate in 1872, as stated, and Mrs. Minor having died in January, 1888, this suit was brought to the March rules following, to subject the said trust-estate to the payment of her debts. She left surviving her one son, Fairfax C. Minor, who conveyed his interest to his mother for her sole and separate use, to be disposed of and conveyed as she may desire, as though she were a *feme sole*, etc. This deed was executed May 11, 1865. Her only other child, Essie, had married the said J. Monroe Heiskell and had died during the lifetime of her mother; leaving, however, surviving her the infant defendant, Minor Heiskell, who has survived Mrs. Louisa F. Minor. This suit and the said suit of *Ropp* v. *Minor* were heard together, and the circuit court at the hearing was of opinion and decreed that on the death of Louisa F. Minor one undivided moiety of the tract called "Greenway" passed under the will of Charles I. Catlett, deceased, to the infant, Minor Heiskell, unaffected

by any lien or incumbrance, and became the absolute property in fee of said Minor Heiskell; but further decreed that the other moiety of Greenway became the property of Louisa F. Minor in pursuance of the deed of Fairfax C. Minor, dated May 11, 1865, and that said moiety is bound by the several liens against the same in the case of *Ropp* v. *Minor;* and decreed that the bill of the complainant, Wallace, in so far as it seeks relief from the sale of Greenway in the said cause of *Wallace* v. *Minor,* be dismissed, etc. And from this decree the case is here on appeal.

The question to be determined is, what was the character of the estate which passed under the will of the said Charles I. Catlett to the children of Mrs. Minor, Fairfax C. and Essie? If the will gave to them a vested remainder, then both had conveyed their interest by the above-mentioned deeds. If a contingent remainder, then the moiety passing to Essie, upon the contingency of her surviving her mother, never vested, she having died before her mother; and the circuit court rightly decreed that it was unaffected by her conveyance, and vested upon the death of Mrs. Minor in the infant defendant, who became entitled as the heir of Mrs. Minor. It will be remembered that under the limitations of the will this estate was for the use, benefit, and behoof of the daughter, during her natural life, and for the use of the heirs of the daughter after the death of the daughter. Who answers this description? Does the daughter who had predeceased the life-tenant? She was not the heir of the life-tenant, her mother. No person is heir of a living person. Who were the heirs of the life-tenant after the death of the life-tenant? The son, Fairfax C., and Minor Heiskell, the grandson—son of the deceased daughter. They are the persons on whom the law casts the estate in lands, tenements, or hereditaments immediately upon the death of the ancestor.

But it is insisted that the testator meant the children of Mrs. Minor by the term "heirs," and that Mrs. Heiskell took a

remainder vested in interest, and her interest passed by her deed to Janney. On the other hand, it is contended that the will gave a remainder limited to the heirs of Mrs. Minor, to take effect only upon the death of Mrs. Minor. "A 'contingent remainder' is a remainder limited so as to depend on an event or condition which may never happen or be performed, or which may not happen or be performed till after the determination of the preceding estate." "A 'vested remainder' is a remainder limited to a certain person, and on a certain event, so as to possess a present capacity to take effect in possession, should the possession become vacant." Mr. Minor defines a "contingent remainder," upon the authority of Fearne and Blackstone (Fearne, Rem., 116, 117; 2 Bl. Comm., 169), as "a remainder limited to an uncertain person or on an uncertain event, or so limited to a certain person and on a certain event as not to possess the present capacity to take effect in possession should the possession become vacant." If the words of the will are to be followed, and the meaning given to the word "heir" which technically belongs to it, then the person to take the remainder after the death of the life-tenant necessarily remained uncertain until her death; for, as we have said, no person can be heir to a living person. But the appellants urge that in this case the word "heirs" must be held to mean "children," and the persons to take were thus rendered certain. The word in question has a well-known technical meaning, and we think technical words are *prima facie* to be understood in their legal sense, unless, from the contents of the will, it plainly appear that the testator intended to use them in a different sense; and when the testator uses only technical phrases the court is bound to understand them as such, because the court cannot say that he did not know their meaning. But if the testator uses other expressions, in other parts of his will, which shows he did not mean to use those phrases technically, then the intention must prevail. It is in conformity with these principles that if the testator uses legal or technical phrases

only, his intentions should be construed by legal rules; and, if he uses common words, his intentions should be regulated according to the common understanding thereof. *Kennon* v. *McRoberts*, 1 Wash., 100; *Hodgson* v. *Ambrose*, 1 Doug., 341; 2 Minor Inst., 1064.

The will in this case, as is well argued by the learned counsel for the appellees, was obviously drawn by a professional hand, by one who clearly understood the meaning of the terms employed, and who selected his words with reference to their true and accurate meaning. "When the word 'heirs' is used, not to denote succession, but to describe a legatee, and there is no context to explain it otherwise, it seems that there is no reason to depart from the natural and ordinary sense of the word 'heir.'" 2 Lomax, Ex'rs, 21.

We are of opinion that the remainders provided in the will of Charles I. Catlett, for the use of the heirs of his daughter after the death of his said daughter, are contingent remainders, and vested on the death of Louisa F. Minor in the son Fairfax C. Minor and the grandchild, Minor Heiskell; and that Mrs. Heiskell, having died before the contingency mentioned in the will happened, took no interest under the clause in question, and the grantee therein took nothing by her deed above mentioned; and the decree of the circuit court of Loudoun appealed from here is without error, and must be affirmed.

FAUNTLEROY, J., dissented.

DECREE AFFIRMED.