# CHARLESTON.

DIEHL *et al. v.* COTTS *et al.*

Decided November 17, 1900.

48   255.
f65   159

1. DEED—*Life Estate Vested—Remainder.*

   A deed conveying "in trust for the sole and separate use and benefit of Susan E. Cotts during her natural life, and upon her death the said property shall be equally divided among the children of said Isaac Cotts and Susan E. Cotts, his wife," creates a life estate in Susan E. Cotts, and a remainder in such children, vesting in both cases at once on the execution of the deed, and such remainder does not await the death of Susan E. Cotts to vest. (p. 256).

2. COMMISSIONER—*May Reopen Case.*

   A commissioner in chancery may, in his sound discretion, where a good foundation is laid, reopen a case heard by him, and hear further proof, at any time before his report is filed; but he ought not to do so without special and very satisfactory cause is shown. (p. 258).

Appeal from Circuit Court, Ohio County.

Bill by Ada Diehl and Larry I. McLain against W. J. Cotts and others. Decree for complainants, and defendants appeal.

*Affirmed.*

ROBERT WHITE and W. W. ARNETT, for appellants.

A. J. CLARKE, for appellees.

BRANNON, JUDGE:

Isaac Cotts made a deed conveying to William J. Cotts real and personal estate "in trust for the sole and separate use and benefit of Susan E. Cotts, the wife of said Isaac Cotts, during her natural life, and upon her death the said property shall be divided equally among the children of said Isaac Cotts and Susan E., his wife. Said trustee shall sell and dispose of said property, or any part thereof, either at public or private sale, whenever he shall be requested so to do by the said Susan E. Cotts, and the proceeds of said sale or sales shall be invested in property, real or personal, for the same uses and trusts." At the date of this deed Isaac Cotts had four children living, one of

them Emily McLain, who died before her mother died, leaving Ada E. Diehl and Larry I. McLain, her only children. Later Susan E. Cotts died. Several months after her death Ada E. Diehl and Larry I. McLain brought this chancery suit in the circuit court of Ohio County setting up said deed and the trust created by it, alleging that William J. Cotts had received, during the life of Susan E. Cotts, certain money from the condemnation for railroad purposes of a ferry property conveyed by the deed, and had sold and received the money for certain lots conveyed by the deed, and charging that he had not invested the money as required by said deed, but had used, consumed or squandered the same; that he had taken possession of the realty conveyed by the deed and received rents therefrom; and the bill sought to charge William J. Cotts with the money so received, and called for an account of his trust under said deed. The case resulted in a decree charging William J. Cotts with said money, with interest after the death of Susan E. Cotts, and with rents received after her death, and from said decree William J. Cotts appeals.

The case turns upon the construction of the deed from Isaac Cotts to William J. Cotts, trustee. Counsel for William J. Cotts asserts that the plaintiffs have no interest under that deed, no right to call on William J. Cotts for an account of the trust under it. The reason for this claim is not made explicit in the brief of the counsel who presents the point. This theory must rest on the idea that the right of the remaindermen under the deed did not vest until the death of Susan E. Cotts, and that as her daughter, Emily A. McLain, died before her mother, Mrs. McLain's children took no interest from their mother. Very clearly there is nothing in this contention. It is very plain that the deed gave Susan E. Cotts a life estate, with remainder to Isaac Cotts' children, and that remainder a present vested one, vested in title and interest at once upon the execution of the deed, but not to be vested in actual use or possession until the death of Susan E. Cotts. The vesting in interest and right of this remainder did not stand in abeyance until the death of Susan E. Cotts, but its actual enjoyment by the remaindermen did stand postponed until then. "Vested remainders, or remainders executed, are those by which a present vested interest passes to the party, though to be enjoyed in future; and by which the estate is invariably fixed to remain to a determinate person after the particular estate is spent. 1 Lomax Dig. 409; 1 Wash. R.

Prop. 38; Tiedm. R. Prop. s. 397; *Brent* v. *Washington,* 18 Grat. 528; *Hansford* v. *Elliott,* 9 Leigh 79; *Martin* v. *King,* 11 Grat. 67. So, Mrs. McLain took a vested estate at once upon the execution of the deed, an estate infalibly fixed in her by that deed, and when she died it passed to her children, though Mrs. Cotts was still alive, giving them full right to call for a settlement by William J. Cotts of his trust under that deed.

Next, counsel contends that it was not strictly a life estate vested by the deed in Susan E. Cotts, but, as best I can understand the brief, a "living" to Mrs. Cotts, and that as the money arising from the condemnation was paid by William J. Cotts to her, she had a right to consume it. The deed plainly creates only a life estate in Mrs. Cotts, and she was entitled only to the ccupation or rents of the realty during her life, and the money arising from the sale thereof or the condemnation thereof must be invested by William J. Cotts upon the same trust existing if there had been no sale or condemnation; in short, she was entitled to only the interest on that money during her life, as it represented the land. The trustee was bound to invest that money according to the deed; but did not do so, otherwise consumed it, and refused to answer and specify where it went. His mother used the money arising from the condemnation of the ferry.

William J. Cotts, as another defence, pleads that Isaac Cotts in 1864 conveyed some real estate to a trustee for the use of his daughter, Emily A. McLain, for life, with remainder to Ada E. and L. A. McLain, who are the plaintiffs, with the understanding that the conveyance was to be in full of all their interest in the property of Isaac Cotts, and that his remaining property should be left only to his remaining children, and thus would set this conveyance up either as an advancement to the McLain children, or a total exclusion from participation in the property conveyed by the deed now in question. The answer to this position is, that this is not a case of intestacy so as to let in any advancement, but a right vested in the McLain children by the positive provision of the deed creating a trust in William J. Cotts. In 1867 Isaac Cotts chose to make a deed conveying estate to William J. Cotts upon express trust for his wife for life, with remainder to all his children, not excluding Emily A. McLain. He did not except her from the benefit of this later deed on account of the former deed. If he so intended, would he not have

done so? The latter deed created a definite, specific trust in William J. Cotts, and he cannot modify, alter or change it, and divert it to other purposes than those defined in that deed, but must follow it. *Atkinson* v. *Beckett,* 34 W. Va. 584. He can only do with the trust property what the deed authorizes. *Crumlish* v. *Railroad Co.,* 32 W. Va. 245.

Another defence sought to be interposed by William J. Cotts is, that certain decrees for money binding the property conveyed by said deed against Isaac Cotts were rendered in 1870, and he, out of his own pocket, paid them. He claims credit for such payment. In the first place, he made no such defence in his answer. The amount paid being several thousand dollars, it is passing strange, if he paid out of his own money, and not his father's money, his father then living, he would fail to whisper this defence in his answer. That alone precludes its consideration. Again the case was before the commissioner from March 28, to October 20, 1898, but Cotts made no such claim, though he was on the witness stand. He waited until the report was closed, and then moved the commissioner to open his account to let in this defence. Thus, we are not at all called on to consider the merit of this defence, but only whether the commissioner erred in refusing to open the account. It may be, as held in *Cooper* v. *Stinson,* 5 Minn. 160, that "where a proper foundation is laid, a referee may, in his discretion, reopen a case tried before him, and hear further proof at any time before his report is filed and delivered." This is supported by *Cleveland* v. *Hunter,* 1 Wend. 104, and *Pattison* v. *Hull,* 9 Cow. 760. In *Remsen* v. *Remsen,* 2 Johns. Chan. 502, it is said "it ought not to be opened for further proof without special and very satisfactory cause shown." The law is stated as above on many authorities in 17 Ency. Pl. & Prac. 1032. Facts above stated show that Cotts had no right to rehear the case before the commissioner. His gross want of diligence forbade it. He said his vouchers of payment had been lost in a flood; but he did not present this as an excuse for not presenting his defence, for he said that records would uphold his claim, and besides, there was Mr. Clark, who was in life and before the commissioner, who received the money, by whom its payment could be proven. Why did not Cotts at the proper time produce this evidence? Moreover, if he, and not his father, paid this money, it was not paid out of trust money, but was a mere personal claim against his father,

several times barred by limitation. And if William J. Cotts did pay it, he says he paid it out of his own pocket, and he did so without any order of court. It is a claim only against his father raked up as an after-thought from the ashes of nearly thirty years. And his father had other property than this trust property to satisfy the demand.

Another defence is that William J. Cotts had settled his account *ex parte* before a commissioner, and that there was nothing in the bill to surcharge and falsify the settlement. Now, the accounts were only between Cotts and his mother, the life tenant, and covered only his transactions during her life; whereas the account here is one entirely since the death of Mrs. Cotts, not involved in those settlements. And moreover, I do not understand that the statute touching *ex parte* settlement of accounts before a commissioner, Code chapter 87, section 6, applies to a trustee appointed by a private deed. No report on his accounts would have any legal force, even if they covered the same transaction. His stewardship is cognizable only in a court of equity. Seeing no error in the decree, it is affirmed.

*Affirmed.*